LANMON NIMS & A. *v.* ENOS BIGELOW PR. AND JOSEPH BANCROFT AND AMOS BANCROFT, TRS.

A married woman, owning a right of dower in her husband's lands, may properly convey it, and take a promissory note therefor payable to herself, equal to the value of such estate. Such promissory note will be protected from her husband's creditors.

So, a married woman, owning in her own right a promissory note, secured by mortgage upon the husband's estate, may sell and release such interest in said estate, and take a new note payable to herself.   The transaction, being executed with the assent of the husband, and in good faith, cannot be impeached, and no advantage can accrue to the husband's creditors by the use of the trustee process.   Until the husband shall exercise his marital right of reducing such promissory note to his possession, the creditor is not entitled to exercise it.

WRIT dated February 5, 1861, served on the trustees, February 6th, 1861.    Judgment has been rendered in favor of the plaintiffs against the defendant.

The trustees disclosed, that, on the 19th day of Jan. 1861, they purchased of the defendant a lot of land and house thereon, situated in Keene, and on the same day gave in part payment therefor five notes for $140 each, signed by themselves payable to Mrs. Bigelow, wife of the defendant, or order, in one, two, three, four, and five years respectively, with interest after April 1, 1861.

Mrs. Bigelow appeared as claimant, and pleaded that the trustees ought not to be charged for the 1st and 2nd notes, because she says that on the 1st day of July 1853, the defendant, for a valuable consideration, gave his note of $151.70 to one Amos Bennett, father of said Emily, and secured the same by mortgage on real estate in Keene, being a portion of the same land conveyed to said trustees for which said notes to said Emily were part of the consideration, and that the said Amos about

the time of decease, viz., July 1, 1857, gave said note and mortgage to said Emily by reason of which she had an interest and title in said real estate. And the said Emily further says, that, at the time of said sale to said trustees, her husband, the said Enos, owed her $462.71, which came to her from her father, the said Amos Bennett, and she further says, that, at the same time, she had a right of homestead and dower in said real estate beyond the reach of said defendant's creditors—by reason whereof she avers, that, before and at the time of signing the deed to said trustees, she claimed her rights and equities in all the land conveyed to said trustees and also the money so due to her as aforesaid from her husband, and, in consideration thereof, these two notes as well as the other three notes were made payable to her and were to belong to her and this she is ready to verify, &c.

To this plea the plaintiffs demurred.

Mrs. Bigelow pleaded 2dly, as to the 1st, and 2nd notes, that they were in good faith and for an adequate consideration executed and delivered to her, and that the execution, conveyance and delivery of said notes to her were not occasioned by the payment or pledge of any property of the defendant.

To her 2nd plea, the plaintiffs replied : 1st, that said two notes were the property of the defendant without this that they were executed and delivered to her by the trustees as and for her property. 2nd, that the execution, conveyance and delivery of said two notes to her by the trustees were occasioned by the payment of certain property of the defendant. 3d, that the execution, conveyance and delivery of said two notes to her by the trustees were occasioned by the pledge of certain property of the defendant. Upon these replications issue was joined.

Asahel Bennett appeared as claimant and pleaded that the trustees ought not to be charged for the 3d, 4th, and 5th notes, because at the time of the service of the writ upon the trustees, said notes had been sold and transferred to him in good faith and for an adequate consideration, and upon this, issue was joined.

Laton Martin appeared as claimant and pleaded that he trustees ought not to be charged for the 2nd note, because he says that before having any knowledge of this suit, to wit, March 13th, 1862, said note was endorsed, assigned and pledged to him by Mrs. Bigelow in good faith and for an adequate consideration as collateral security to a certain other note for $40, executed at the time of the pledge to him by the defendant for a good and valuable consideration, and that he is still the owner of said $40 note, which is wholly unpaid.

To this plea the plaintiffs demurred.

The Ashuelot Bank was notified to appear at April Term, 1863, and show that the 1st note was transferred to said bank in good faith and for an adequate consideration before the service of the writ on the trustees. The bank appeared, and, in answer to interrogatories, stated, that, on the 28th day of Sept. 1861, the bank loaned to Mrs. Bigelow $125, took her note for that sum, and said 1st note as collateral security therefor, and, on the 15th day of Dec. 1861, discounted said 1st note for Mrs. Bigelow, paying her the difference between the amount of it, and the

amount of her indebtedness to the bank secured by pledge of said 1st note; that all the negotiations were made through the defendant, who professed to be acting in her behalf; that the bank had no knowledge of this suit, until notified on the 18th day of May 1863, to appear as claimants; that the trustees paid the bank $52.16 on said 1st note, July 12th, 1862, and that the balance is unpaid.

By agreement of the plaintiffs and the claimants, Mrs. Bigelow, Asahel Bennett, and Laton Martin, all matters of fact were to be determined by the court at this term, all judgments and orders to be rendered upon a case reserved for the Law Term. The residence of all parties interested and the place of all contracts made and rights vested are and have been in New Hampshire, and all questions arising are to be determined by the laws of this State. The allegations in the plea of Bennett and in the plea of Martin were proved. The disclosure of the trustees and the statements of the bank are true and correct.

At the time of the sale of the house and land by defendant to the trustees, Jan. 19, 1861, the defendant was indebted to Bennett in a sum larger than $420, which Mrs. Bigelow had promised to see paid, and, by an agreement between her and her husband, the 3d, 4th, and 5th notes claimed by Bennett were taken payable to her, with the design of passing them immediately to Bennett in payment of defendant's indebtedness to him, which was done.

Mrs. Bigelow's father had a note for $150 against defendant, secured by mortgage on said land; her father told her that he would give her the note and mortgage, but he never delivered either to her. After his death, and several years before Jan. 19, 1861, his administrator discharged the mortgage, and delivered the note and mortgage to her.

Mrs. Bigelow informed her husband that she would not sign the deed to the trustees unless the five notes were made payable and given to her, intending to pass three of them to Bennett, and claiming two of them, amounting to $280 for her dower and legal and equitable rights in the land. The price of the land was $2000. The defendant was fifty years of age, and Mrs. Bigelow forty-five, with chances of life equal to the average of persons of those ages. The defendant alone negotiated with the trustees for the sale of the land, and directed one Sturtevant to make the deed and the five notes. The trustees went to Sturtevant's office and signed the notes. Sturtevant carried the deed (which had been previously signed by defendant,) and the notes to Mrs. Bigelow, and asked her if she would sign the deed, and she said she would, if she could have the notes payable to her. She took the notes and signed the deed.

The defendant, claiming to act as his wife's agent, carried the 1st note to the bank, and the 2nd to Martin, and carried the money from the bank and from Martin, to his wife, and she used it in educating her daughter, and in other family expenses.

She would not have signed the deed without receiving the notes. The land conveyed to trustees was under a mortgage to Savings Bank for $600. Defendant has since purchased and now owns another homestead subject to a mortgage to Savings Bank.

The questions of law arising in this case were reserved.

*C. C. Webster*, for plaintiffs.

*Lane* and *Woodward*, for trustees, and the claimants of property in their hands.

Defendant's counsel refer the court to Pamphlet Laws 1860, chap. 2342 ; Comp. Stat. chap. 158, sec. 3 ; *Bullard* v. *Briggs*, 7 Pick. 533 ; 2 Kent's Com. (9th Ed.) 162 ; 2 Hilliard on Real Prop. 182 ; *Coffin* v. *Morrill*, 22 N. H. 352 ; *Hall* v. *Young*, 37 N. H. 147.

NESMITH, J.   This case is made from the disclosures of the trustees, also from the facts found by the judge at the recent Trial Term upon the several issues made on the pleadings in behalf of Mrs. Bigelow, wife of the principal defendant, and Asahel Bennett and Laton Martin, claimants, under different circumstances, of five promissory notes, signed by the alleged trustees, dated January 19, A. D. 1861, and made payable to Mrs. Bigelow or order ; each note being for $140, with interest after April 1, 1861, and all on time.   Under the agreement of the parties, the court found the facts, and we are to take such as are reported as true, and to draw such inferences from them as the law will allow, not imputing fraud, unless legitimately arising out of the transactions as stated.

1.   The court says, the allegations of the plea of Asahel Bennett, the claimant of the third, fourth and fifth notes aforesaid, are true.   This being so, said Bennett stands here in the light of an innocent endorsee of said notes, and is protected from the claim of the plaintiffs, as creditors of Enos Bigelow.   Before the service of this trustee process, and on the same day the notes were given, these three notes were sold and delivered upon full consideration to said Bennett to pay an equal amount of indebtedness from the principal defendant to him.   This transaction had the approbation of all in interest, and seems to have been in good faith, and we do not see how the plaintiffs, or any other creditor of Bigelow, can now question it, or divest Bennett of the rights acquired by him by virtue of his settlement.   He is, therefore, to be considered as justly entitled to hold the aforesaid three notes as his own property.

2.   Mrs. Bigelow was the claimant of the other two notes in her own right ; the consideration of the same being part of the price of the premises sold and conveyed by her husband to the trustees.   These notes are presumed to have been in her possession at the time of the service of the trustee process.   Afterwards by her procurement, and through the agency of her husband, these notes were severally negotiated to the Ashuelot Bank and to Laton Martin.   The Bank and Martin both derive their title through Mrs. Bigelow, and it becomes material to examine the grounds of her claim to them.   If her title to them be sound, she could doubtless transmit a good title to the present holders.   She seeks to establish her right to these notes, by showing that their consideration was founded upon her own interest or property, released by her by virtue of the conveyance of the premises to the trustees, executed on the day of

their date, viz., January 19, 1861 ; and, that said notes were made payable to herself by her husband's assent, as her separate property, to be used and enjoyed to her own future beneficial use, free from the control of her husband or his creditors ; and that the husband has not hitherto interfered with these notes, nor made claim to them by exercising his marital right of reducing them to his possession ; and that, until this is done by the husband, the creditor is not entitled to exercise it. *Marston* v. *Carter & Tr.*, 12 N. H. 159 ; *Poor* v. *Hazelton & Tr.*, 15 N. H. 569.

It is clear that a mere voluntary settlement made by a husband upon his wife during the marriage, he being in debt, is void as against creditors ; but it is equally clear that a conveyance made in trust for the wife after marriage upon the transfer to him by the wife of an equivalent out of her property will be sustained both in equity and at law. For the case supposes that whatever is taken from the funds of the husband, whereby he might satisfy his creditors, is replaced by an equal amount from the funds of the wife, which his creditors might not otherwise reach. *Ballard* v. *Briggs*, 7 Pick. 538. "Post-nuptial contracts" says Judge Parker, in giving his opinion in that case, " are sanctioned upon the principle, that the convenience and interest of families frequently require such exchanges. If they are honest they ought to be supported, if feigned or pretended, they should be uncovered and defeated."

The plaintiffs insist that the consideration of these notes was the property of the husband. The wife answers that they were founded on the release of her right of dower and her homestead right, and also upon the *discharge* of her mortgage upon the said premises, sold and conveyed to the trustees. The case finds that Bigelow has acquired by purchase a new homestead, and, as the wife cannot hold but one homestead at one and the same time, she cannot therefore be entitled to any other right except that now owned and possessed in common with her husband. She has parted with one right to resume another of a like nature in the new estate. Therefore she cannot be heard to establish a consideration for the notes on this ground. *Horn* v. *Tufts*, 39 N. H. 478. But her release of dower in the premises sold to the trustees stands on a different footing. This right of dower is deemed valuable in her who owns it, and is estimated in proportion to the worth of the whole estate, and is properly the subject of bargain and conveyance by fine in England, and by deed with us. Its value also more or less depends upon the relative ages, constitution, habits and health of the husband and wife. So long as the husband lives, this estate may be considered as contingent and of which the wife cannot be divested but by her own act and consent, crime, or death before her husband.

It has been settled that a relinquishment of dower by the wife, during her husband's life, in a deed by the husband of his estate, is a good and valuable consideration for a conveyance by the husband to the wife of property which may be considered a fair equivalent ; and such a conveyance will be valid or otherwise against the creditors of the hus-

band, according as it was fair or fraudulent. *Ballard* v. *Briggs, ante* ; *Needham* v. *Sanger*, 17 Pick. 500.

Under the authority of the law recognized in these cases, and in consideration of the release of dower by Mrs. Bigelow in the estate sold to the trustees, we think an equivalent equal to the value of her estate might be reserved on her part, and that this might justly enter into and form the consideration of these two notes executed to herself. In addition to these was the surrender of her interests acquired by her husband's note and mortgage to her father Bennett, which existed as a lien upon a part of the estate conveyed to the trustees, and was intended as a gift to her by her father, and perfected only by his administrator. It is suggested that the said *surrender* of the note and mortgage was intended to operate as a final discharge of the same, therefore enuring to the husband's benefit, and not to her benefit as assignee of her father's rights. Such was not apparently the intent of the parties. The arrangement was doubtless intended to bestow an advantage upon the wife. In estates acquired by the act of the parties, they merge or not, and mortgages are extinguished or not, according to the intent of the parties, as collected from the deed, or circumstances of the transaction, and where these furnish no evidence of the intent, then from the interest of the parties. Greenleaf's Note to 1st Cruise, 239. This doctrine has been settled in many cases in this State. *Bell* v. *Woodward*, 34 N. H. 96, and cases cited.

It was the *right* and *interest* of the wife to keep the mortgage alive. The delivery of the note was to her, which by operation of law carried with it the mortgage ; and she accordingly had the legal right, upon the release of the mortgage, to take security to herself in another form equal to its value and amount. Of course, it worked no more prejudice for her to receive the amount of this *lien* than it would if the administrator of Bennett had enforced it in his own name. The creditors of Enos Bigelow had no right to complain of the transaction. This note was dated in July 1853. There is nothing shown as to the payment of any part of it. At the time of the sale to the trustees, the amount of the note would have exceeded $220. We have not the means of ascertaining the character of the other claims, which made up the balance of the other indebtedness of the defendant to his wife. We only know from the case, that all the indebtedness of the husband, which originated from funds from her father was in amount $462.71. If any portion of this amount consisted in claims that should not have been enforced, it belonged to the plaintiffs, under the issue of the Trial Term, to have specified and resisted them by competent proof. As the case now stands, the whole amount having been proved, and assented to by the husband, we are unable to reject any portion of it.

In reviewing the facts of the case, and more especially the circumstance, that three of the notes in dispute went, as appears to us, to discharge the proper indebtedness of Enos Bigelow, the husband, and that the wife's equities in the estate were found equal to the amount of the other two notes, we cannot find any ground for the maintenance of the trustee process. As the husband, the principal defendant, has not in any

legal manner enforced his marital rights by reducing these two notes to his possession, but has allowed the wife to dispose of them to her own private advantage in the manner she thought proper, we are of the opinion, the plaintiffs cannot prevail, and that the trustees should be discharged, and that the claims of the wife's assignees should be protected.